MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EARL JOHNSON,<br><br>    Plaintiff,<br><br> v.<br><br>OFFICER MARTIN SMITH, SEAN<br>LOUGHRAN, WILLIAM GREENWOOD,<br>CEDRIC CAMPBELL, JOHNETTA<br>WILLIAMS, and CITY OF CHICAGO,<br><br>    Defendants. | No. 07 C 1562 |

## OPINION AND ORDER

  Plaintiff Earl Johnson alleges that he was arrested without probable cause, subjected to excessive force, and maliciously prosecuted. Named as defendants are Chicago police officers Martin Smith, William Greenwood, Cedric Campbell, Johnetta Williams, and Sean Loughran. The City of Chicago is also named as a defendant. The Amended Complaint denominates four counts.[1] Count I is a federal false arrest claim against defendants Smith and Loughran. Count II is a federal excessive force claim, also against defendants Smith and Loughran. Count IV is a state law malicious prosecution claim against the

---

[1] Count III was previously dismissed on defendants' motion to dismiss.

five individual defendants and also against the City based on <u>respondeat superior</u>. Defendants have moved for partial summary judgment dismissing Counts I and IV.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. <u>Crawford v. Metropolitan Gov't of Nashville & Davidson County, Tenn.</u>, 129 S. Ct. 846, 849 (2009); <u>Lewis v. CITGO Petroleum Corp.</u>, 561 F.3d 698, 702 (7th Cir. 2009); <u>Freeland v. Enodis Corp.</u>, 540 F.3d 721, 737 (7th Cir. 2008). The burden of establishing a lack of any genuine issue of material fact rests on the movant. <u>Delta Consulting Group, Inc. v. R. Randle Constr., Inc.</u>, 554 F.3d 1133, 1137 (7th Cir. 2009); <u>Hicks v. Midwest Transit, Inc.</u>, 500 F.3d 647, 651 (7th Cir. 2007); <u>Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer</u>, 472 F.3d 943, 946 (7th Cir. 2007); <u>Outlaw v. Newkirk</u>, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>National Athletic Sportswear, Inc. v. Westfield Ins. Co.</u>, 528 F.3d 508, 512 (7th Cir. 2008); <u>Hicks</u>, 500 F.3d at 651. The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. <u>Celotex</u>, 477 U.S. at 324; <u>Freundt v. Allied</u>

Tube & Conduit Corp., 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); O'Brien v. Encotech Constr., 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Lorillard Tobacco Co. v. A & E Oil, Inc., 503 F.3d 588, 594-95 (7th Cir. 2007); Yasak v. Retirement Bd. of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir. 1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir. 1988); Freundt, 2007 WL 4219417 at *2. As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do

> more, however, than demonstrate some factual
> disagreement between the parties; the issue
> must be 'material.'" Logan, 96 F.3d at 978.
> "Irrelevant or unnecessary facts do not preclude
> summary judgment even when they are in dispute."
> Id. (citation omitted). In determining whether
> the nonmovant has identified a "material" issue
> of fact for trial, we are guided by the
> applicable substantive law; "[o]nly disputes that
> could affect the outcome of the suit under
> governing law will properly preclude the entry of
> summary judgment." McGinn v. Burlington Northern
> R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
> (citation omitted). Furthermore, a factual
> dispute is "genuine" for summary judgment
> purposes only when there is "sufficient evidence
> favoring the nonmoving party for a jury to return
> a verdict for that party." Anderson v. Liberty
> Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
> 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
> doubt" regarding the existence of a genuine fact
> issue is not enough to stave off summary
> judgment, and "the nonmovant fails to demonstrate
> a genuine issue for trial 'where the record taken
> as a whole could not lead a rational trier of
> fact to find for the non-moving party . . . .'"
> Logan, 96 F.3d at 978 (quoting Matsushita Elec.
> Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
> 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
> (1986)).

Outlaw, 259 F.3d at 837.

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of ruling on defendants' summary judgment motion are as follows. As of August 22, 2004, plaintiff was a 34-year-old male who was six foot, three inches tall and weighed more than 300 pounds. On that date, plaintiff's brother-in-law Mark Stribling asked plaintiff to drive him to 55th and Garfield

Streets in Chicago, Illinois where Stribling's mother reportedly had been attacked. They parked in front of the mother's house and saw an angry group of people, including members of plaintiff's family, head toward a liquor store at 55th and Garfield. Plaintiff went inside the liquor store and urged his family members to leave because the owner was calling the police. Before plaintiff's family exited the store, police arrived in response to a report of a man with a knife. The alleged assailant had already departed. Police asked those still in the store to leave. People exited the store, but 10-to-20 people were still gathered outside the store and were in an angry mood. The owner requested that police officers disperse that crowd and the officers did so. Defendants Loughran, Greenwood, and Williams were among the officers at the scene.

Officers ordered the crowd outside the store to disperse. Plaintiff and members of plaintiff's family headed toward a nearby apartment building where some of the family members lived. Plaintiff followed behind his family members. As he did so, he heard Loughran say to the other officers, "Let's go get them." As the officers crossed the street following the crowd, plaintiff came along side the officers[2] and offered to help calm down the

---

[2] At his criminal trial, plaintiff stated, "I crossed the street and I cut the police officers off." Def. Exh. 8 at 146. The trial court based its findings of guilt on Johnson's actions of cutting off the police "and telling them who they should or

- 5 -

situation. Loughran responded, "Who the fuck are you?" Plaintiff responded that some of the people were his family members and, if given the opportunity, he could help calm them down. Loughran's response was, "When I give them an order to disperse, that's an order for them to disperse." Plaintiff replied that they were dispersing by walking away.[3]

Plaintiff split off from the officers and went to the courtyard of the apartment building where approximately 12 people were gathered. He arrived approximately two and one-half minutes before the police entered the courtyard. Plaintiff urged his family members to go inside. Defendants Smith and Campbell

---

should not talk to." People v. Johnson, No. 1-07-1797 at 8 (1st Dist. Ill. App. Ct. Aug. 28, 2008) ("Johnson Appeal"). Defendants contend the trial testimony should be construed as plaintiff blocking the officers' path. Especially in light of plaintiff's deposition testimony that he "approached" the officers, however, the trial testimony cannot be so construed for purposes of defendants' summary judgment motion.

[3]Loughran testified that, at some point between the liquor store and apartment building, plaintiff said, "everyone has to leave." Loughran testified that he understood this to mean that plaintiff was telling everyone, including the police, to leave. Contrary to defendants' contention, plaintiff's admission that Loughran so testified is not an admission that plaintiff made such a statement. Plaintiff points to testimony that he was telling his family to leave. That is sufficient to create a genuine factual dispute as to whether plaintiff said the precise words cited by Loughran and whether a police officer at the scene could have reasonably construed any of plaintiff's statements to leave as being directed to the officers. On defendants' summary judgment motion, it must be assumed that plaintiff made no statements that could be reasonably construed as telling the officers to leave.

arrived in a squadrol, joining the other three defendants. As the officers entered the courtyard, plaintiff began to head out of the courtyard. At this point, there were approximately a dozen people in the courtyard. There is, however, no evidence presented that the group of people was still angry or volatile. Loughran then placed plaintiff under arrest, telling plaintiff, "I gave you an opportunity to leave, now you're under arrest." Plaintiff turned around and allowed officers to handcuff him. All five defendants were in the immediate vicinity at the time of the arrest. There is no evidence that, as of his arrest, plaintiff's presence threatened to provoke anyone in the crowd nor is there evidence of any violence or confrontation other than defendants' subsequent treatment of plaintiff.

After plaintiff was handcuffed, an officer grabbed one of plaintiff's cousins and plaintiff stated, "He didn't have anything to do with this." Defendant Smith then knocked plaintiff to the ground and Loughran tased plaintiff. Plaintiff blanked out for a period of time after being tased. Smith and other officers lifted plaintiff by his arms and legs and tossed him into the back of a squadrol.

Defendants contend that, when being placed in the squadrol, plaintiff kicked defendant Smith in the mouth. Plaintiff has no memory of that happening, but testified he cannot be certain of everything that happened because of the

effect of the taser. Loughran and Smith testified that plaintiff kicked Smith. Defendant Campbell testified that he saw plaintiff being placed into the squadrol and could not recall seeing or hearing Smith being kicked. Two of plaintiff's relatives testified that they saw plaintiff carried to and placed in the squadrol, but did not see any officer kicked or any officer with a mouth injury. On defendants' summary judgment motion, it must be assumed that plaintiff did not kick Smith.

Plaintiff was transported to a police station. Smith, Williams, and Campbell were at the station when plaintiff arrived. Greenwood completed and signed the arrest report, and Williams also signed the report and completed his own case report. Smith completed an injury on duty report, an officer's battery report, and a tactical response report. Loughran completed an injury on duty report and a tactical response report. Campbell completed a memorandum to the District Commander in which he detailed his observations of plaintiff's purported battery of Smith. Greenwood completed a criminal complaint charging plaintiff with disorderly conduct and Smith completed a criminal complaint charging plaintiff with aggravated battery to a police officer.

Police Detective Jean Romic, who is not a defendant, was assigned to conduct an investigation of the charges. She was responsible for forwarding the information to the felony review

division of the State's Attorney's Office. As part of her investigation, Romic interviewed all the defendants.

Greenwood was the only one to testify before the grand jury. The grand jury returned an indictment charging plaintiff with two felony counts of aggravated battery to a peace officer and one felony count of resisting or obstructing a peace officer.

Loughran, Williams, and Campbell all spoke with the Assistant State's Attorney assigned to prosecute plaintiff's case. A bench trial was held at which Greenwood and Smith testified. Prior to the testimony of these two, all five defendants met together in the courthouse. Campbell and Williams denied that plaintiff's case was discussed when they met the testifying officers, but, on defendants' summary judgment motion, it is reasonable to infer that they did discuss plaintiff's case.

Following the trial, plaintiff was acquitted on all the felony charges, but convicted of the lesser included offense of misdemeanor resisting or obstructing a peace officer. Plaintiff appealed and the conviction was reversed on the due process grounds that there was a variance from the indictment. See Johnson Appeal. The trial court had found plaintiff guilty of a misdemeanor based on cutting off Loughran while the group was headed to the apartment building, but the felony charge of obstruction had been based on the alleged kicking of Smith in the mouth.

Smith and Loughran are the only two defendants alleged to be liable for false arrest. To succeed on his Count I false arrest claim, plaintiff must adequately allege

> that probable cause for his arrest was lacking. See Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause."). If probable cause to arrest is found to exist, it "is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006). Police officers possess probable cause to arrest when "'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." Id. (quoting Kelley, 149 F.3d at 646). Probable cause is not evaluated by the court based upon "the facts as an omniscient observer would perceive them," but instead is determined by the facts "as they would have appeared to a reasonable person in the position of the arresting officer." Id. (quoting Kelley, 149 F.3d at 646; citing Woods v. City of Chicago, 234 F.3d 979, 987 (7th Cir. 2000)).

Williams v. Rodriguez, 509 F.3d 392, 398-99 (7th Cir. 2007). The probable cause may be as to any crime, even if it is different from the crime invoked by the officers at the time of the arrest. Devenpeck v. Alford, 543 U.S. 146, 153 (2004). An arresting officer's subjective intent is irrelevant. An arresting officer's state of mind is only relevant regarding the pertinent facts of which he or she would have knowledge. Id.

Defendants contend there was probable cause to arrest plaintiff for both disorderly conduct and aggravated battery to a police officer. On summary judgment, it must be taken as true that plaintiff did not kick Smith. There are no facts supporting a reasonable belief that plaintiff had committed an aggravated battery. The Chicago Municipal Code § 8-4-010(a) provides: "A person commits disorderly conduct when he knowingly does any act in such unreasonable manner as to provoke, make or aid in making a breach of peace." A similarly worded provision of the state disorderly conduct statute has been construed as encompassing the refusal to obey a lawful order of a police officer. Ryan v. County of DuPage, 45 F.3d 1090, 1093 (7th Cir. 1995) (quoting People v. Yocum, 24 Ill. App. 3d 883, 321 N.E.2d 731, 733 (3d Dist. 1974)); Marcavage v. City of Chicago, 635 F. Supp. 2d 829, 844 (N.D. Ill. 2009). Cf. Braun v. Baldwin, 346 F.3d 761, 765 (7th Cir. 2003) (applying Wisconsin disorderly conduct statute, but noting it is the same as Illinois law and citing Illinois case law). Refusal to obey an order still must be considered in light of the surrounding circumstances, including the seriousness of ongoing events. Marcavage, 635 F. Supp. 2d at 843-44; Overstreet v. Myers, 75 F. Supp. 2d 858, 861 (N.D. Ill. 1999). To be a violation of subsection (a), the offender's disobedience of an order still must threaten to or actually provoke, make, or aid in making a breach of peace. See Yocum,

321 N.E.2d at 733; People v. Gentry, 48 Ill. App. 3d 900, 363 N.E.2d 146, 150 (1st Dist. 1977); City of Chicago v. Blakemore, 15 Ill. App. 3d 994, 305 N.E.2d 687, 688-89 (1973); Biddle v. Martin, 992 F.2d 673, 677 (7th Cir. 1993); Kies v. City of Aurora, 156 F. Supp. 2d 970, 984-85 (N.D. Ill. 2001). Cf. Braun, 346 F.3d at 765. Also, the offender's conduct must be unreasonable. Biddle, 992 F.3d at 677; Kies, 156 F. Supp. 2d at 985.

Defendants do not contend that they had a reasonable basis to believe plaintiff was provoking others in the crowd. They instead focus on plaintiff's failure to follow an order to disperse.[4] Defendants contend that plaintiff going into the apartment building courtyard after being told to disperse is a sufficient basis to arrest him for disorderly conduct. Defendants contend that, whether or not plaintiff was actually trying to settle down the others, it was still reasonable to arrest plaintiff because the officers would only know that he was

---

[4] Defendants also rely on plaintiff's purported statement that the police should leave. As previously discussed, there is a genuine factual dispute as to whether plaintiff made such a statement. In any event, arguing with a police officer will not constitute disorderly conduct absent additional circumstances such as contributing to or inciting a breach of peace or interfering with the officer's performance of his or her duties. See Payne v. Pauley, 337 F.3d 767, 777-78 (7th Cir. 2003); Kies, 156 F. Supp. 2d at 985. There is no evidence that plaintiff incited the crowd and there is a factual dispute as to whether plaintiff interfered with the officers' performance of their duties.

still with the crowd instead of having dispersed. Defendants, however, point to no undisputed evidence that plaintiff's conduct in any way contributed to or threatened to contribute to provoking anyone who was present. At the point of his arrest for being present in the courtyard instead of having dispersed, there is no evidence that a volatile situation still existed. Under the facts assumed to be true for purposes of summary judgment, Loughran and Smith had no reasonable basis for arresting plaintiff for disorderly conduct.

As the previous discussion establishes, prior to 2006, the law was well established that a person could not be charged with disorderly conduct only for disobeying a police order. Count I cannot be dismissed based on qualified immunity. Count I will not be dismissed.

The elements of an Illinois malicious prosecution claim based on a criminal prosecution are: "(1) the defendant brought a criminal proceeding against the plaintiff; (2) the proceeding terminated in a manner indicative of innocence; (3) the defendant lacked probable cause to bring the proceeding; (4) the defendant acted out of malice; and (5) injury." Porter v. City of Chicago, 393 Ill. App. 3d 855, 912 N.E.2d 1262, 1265 (1st Dist.), appeal denied, 234 Ill. 2d 550, 920 N.E.2d 1080 (2009). In response to defendants' motion, plaintiff clarifies that his malicious prosecution claim is limited to being prosecuted on the charge of

misdemeanor obstruction of a police officer. Defendants contend plaintiff's claim fails because (a) there was probable cause to arrest him; (b) the dismissal of this charge on appeal was not indicative of innocence; (c) defendants were not responsible for commencing or continuing the criminal action; and (d) lack of malice.[5]

As was previously discussed regarding Count I, undisputed facts do not support that probable cause existed to arrest plaintiff. The previous discussion of probable cause does not address the misdemeanor obstruction charge on which plaintiff was found guilty. An Illinois statute provides: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a). "The statute does not prohibit a person from verbally resisting or arguing with a police officer about the validity of an arrest or other police action. People v. Raby, 40 Ill. 2d 392, 399, 240 N.E.2d 595, 599 (1968). Verbal resistance or argument alone, even the use of abusive language, is not a violation of the statute. People v. Long, 316 Ill. App. 3d 919, 927, 738 N.E.2d 216, 222 (2000). Rather,

---

[5]Other grounds raised by defendants pertain only to prosecution of aggravated battery and felony obstruction of justice. Plaintiff has clarified his malicious prosecution claim is not based on those charges.

the statute prohibits a person from committing a physical act of resistance or obstruction--a physical act that impedes, hinders, interrupts, prevents or delays the performance of the officer's duties, such as going limp, forcefully resisting arrest, or physically helping another party to avoid arrest. Raby, 40 Ill. 2d at 399, 240 N.E.2d at 599." People v. McCoy, 378 Ill. App. 3d 954, 881 N.E.2d 621, 630 (3d Dist. 2008). As was held in plaintiff's appeal of his criminal conviction, Johnson Appeal at 8-9, violation of this statute requires a physical act. There is a genuine factual dispute as to whether plaintiff kicked Smith, physically struggled when placed under arrest, and/or physically interfered with Loughran crossing the street. The lack of probable cause element is satisfied.

Defendants contend that vacating a conviction based on a variance with the indictment is not a termination consistent with innocence. Defendants cite no case law supporting this assertion nor does plaintiff cite any case law on point. This court has not found any case from Illinois or any other jurisdiction that reaches the question of whether dismissal of a case based on a variance with the indictment should be considered indicative of innocence.[6] Illinois courts have indicated that "dismissal of

---

[6] In Kroger Co. v. Puckett, 351 So. 2d 582, 585-87 (Ala. Civ. App. 1977), the court held that dismissal of a prosecution based on a variance satisfied the termination in favor of the accused element of a malicious prosecution claim. In holding

the charge on other than purely technical grounds (as, for example, lack of jurisdiction or defective pleading)" is indicative of innocence. See Rich v. Baldwin, 133 Ill. App. 3d 712, 479 N.E.2d 361, 365 (5th Dist. 1985). See, e.g., Nielsen v. Village of Lake in the Hills, 948 F. Supp. 786, 797 (N.D. Ill. 1996) (dismissal for lack of jurisdiction). Rich holds that, in that case, dismissal of the case based on speedy trial rights was not a purely technical ground, but one indicative of innocence because it showed the prosecution's lack of interest in pursuing the charges. 479 N.E.2d at 364-65. See also Bryant v. Whalen, 759 F. Supp. 410, 419-20 (N.D. Ill. 1991) (dismissal based on statute of limitations was indicative of innocence because it showed abandonment of the prosecution). Compare also Swick v. Liautaud, 169 Ill. 2d 504, 662 N.E.2d 1238, 1243 (1996) ("circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution;" nolle prosequi is not indicative of innocence if it is based on an agreement or compromise, misconduct on the part of the accused, or the impossibility or impracticality of bringing the accused to trial); Kincaid v. Ames Dep't Stores, Inc., 283 Ill. App. 3d 555,

---

that a malicious prosecution claim under Alabama law does not require that the termination of the criminal proceeding be indicative of innocence, the court impliedly assumed that the dismissal based on a variance was not indicative of innocence.

670 N.E.2d 1103, 1110 (1st Dist. 1996) (based on surrounding circumstances, nolle prosequi indicative of innocence because prosecutor testified he abandoned case because of lack of evidence and had promised not to seek to refile the case). The burden is on plaintiff to present evidence establishing that the dismissal of the misdemeanor conviction was indicative of innocence. Swick, 662 N.E.2d at 1243; Penn v. Harris, 296 F.3d 573, 577 (7th Cir. 2002); Logan v. Caterpillar, Inc., 246 F.3d 912, 925 (7th Cir. 2001). This determination must be made in light of the circumstances surrounding the dismissal of the charge and the circumstances must compel the inference that there existed a lack of reasonable grounds to pursue the criminal prosecution. Swick, 662 N.E.2d at 1243; Kincaid, 670 N.E.2d at 1110; Penn, 296 F.3d at 577; Logan, 246 F.3d at 925. Compare also Deng v. Sears, Roebuck & Co., 552 F.3d 574, 576-77 (7th Cir. 2009) (dictum addressing ambiguities in Swick innocence standard).

As to innocence, the parties primarily rely on the Illinois Appellate Court decision in plaintiff's criminal case. The court held that the misdemeanor obstruction charge required proof of a physical act of interference. Johnson Appeal at 8-9. The court noted that the only possible evidence supporting physical interference was plaintiff's own testimony at his criminal trial (elicited by his own attorney) that he "cut the

police officers off." Id. at 9.⁷ The court did not reach the question whether the evidence would have been sufficient to support the conviction. Id. at 10. The court limited its ruling to the variance with the indictment which had based the obstruction charge on the alleged struggle with Smith when plaintiff was being transported following his arrest. See id. at 8. "A variance between the charging instrument and the proof at trial is considered fatal if it is both material and of such character that it misleads the defendant in making his defense or exposes him to double jeopardy." Id. at 7.

The Illinois Appellate Court concluded:

> We cannot accept that defendant and his counsel would have intentionally introduced [the cutting off] testimony had they been aware it would expose defendant to a misdemeanor conviction. One of the purposes of an indictment is to allow the defendant to prepare a defense for trial. People v. Green, 83 Ill. App. 3d 982, 986 (1980). We believe that the indictment in this case misled defendant in preparing his defense and that defendant and his counsel would have prepared differently had the indictment included any indication that defendant was on

---

⁷As was previously noted, this trial testimony is in the summary judgment record. On the pending summary judgment motion, all reasonable inferences and all factual disputes are resolved in plaintiff's favor. That is different from plaintiff's criminal appeal in which, on review for factual sufficiency, the evidence would have been viewed in the light most favorable to the prosecution. People v. Nesbit, ___ Ill. App. 3d ___, ___ N.E.2d ___, 2010 WL 610032 *6 (3d Dist. Feb. 11, 2010). The Illinois Appellate Court, however, did not reach the issue of the sufficiency of the evidence. Johnson Appeal at 10.

> trial for actions other than kicking officer
> Smith during transport.
> In this case, the variance between the facts alleged in the indictment and the proof at trial was both material and of such character that it misled defendant in making his defense. Accordingly, the variance was fatal and due process requires that defendant's conviction be reversed.

Id. at 9-10.

The Appellate Court decision supports that plaintiff was innocent of obstructing the officers by kicking or otherwise struggling with them. It, however, leaves open the question of whether plaintiff was innocent of obstructing Loughran by cutting him off in the street. Plaintiff presents no evidence to explain why, after the reversal, the prosecution did not choose to recharge him with misdemeanor obstruction based on the cutting off. Perhaps it was due to concerns related to double jeopardy,[8] a disinterest in further pursuing a misdemeanor charge, or a belief that the evidence as to obstruction based on cutting off the officers was weak. Speculation is not enough; plaintiff had the burden of presenting evidence compelling an inference that

---

[8] Double jeopardy would preclude retrying plaintiff on a lesser included offense of the felony obstruction charge on which he was acquitted. See United States v. Peel, 595 F.3d 763, 767 (7th Cir. 2010). It would not preclude retrying plaintiff on an obstruction charge based on facts other than those charged in the original case. The Appellate Court's holding was that obstruction based on cutting off the police officers was not charged in the indictment.

any abandonment by the prosecution was indicative of innocence. Having failed to meet this burden in responding to summary judgment, it must be held that the evidence is insufficient to support the innocence element of plaintiff's malicious prosecution claim. Cf. Swick, 662 N.E.2d at 1243; Penn, 296 F.3d at 577. The Count IV malicious prosecution claim will be dismissed in its entirety.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [66] is granted in part and denied in part. Count IV is dismissed. All claims against defendants City of Chicago, William Greenwood, Cedric Campbell, and Johnetta Williams are dismissed. In open court on May 20, 2010 at 11:00 a.m., the parties shall submit an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed voir dire questions, motions in limine with supporting briefs, and proposed jury instructions.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: MARCH 26, 2010